MATTHEW C. LOVELL (SBN: 189728)
mlovell@nicolaidesllp.com
RANDALL P. BERDAN (SBN: 199623)
rberdan@nicolaidesllp.com
NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP
101 Montgomery Street, Suite 2300
San Francisco, CA 94104
Telephone:   (415) 745-3770
Facsimile:    (415) 745-3771

Attorneys for Plaintiffs
AMERICAN HOME ASSURANCE COMPANY and
NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN HOME ASSURANCE COMPANY, a New York Corporation, and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., a Pennsylvania Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>AMERON INTERNATIONAL CORPORATION, a Delaware Corporation,<br><br>Defendant. | Case No.<br><br>**AMERICAN HOME ASSURANCE COMPANY AND NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.'S COMPLAINT FOR REIMBURSEMENT** |

Plaintiffs American Home Assurance Company ("American Home") and National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") for their complaint against Ameron International Corporation ("Ameron") allege as follows:

## JURISDICTION AND VENUE

1. Jurisdiction of this action is founded upon 28 U.S.C. section 1332(a) (subject matter jurisdiction by virtue of diversity of citizenship), as the parties are citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2. Venue is proper in the Central District of California pursuant to 28 U.S.C. section 1391(b), because it is the judicial district in which, at all relevant times with respect to the acts alleged herein, Ameron maintained its principal place of business (Pasadena, California), the insurance policies that are the subject of this lawsuit were issued to Ameron, and a substantial part of the events giving rise to this dispute occurred.

## PARTIES

3. American Home is a corporation organized and existing under the laws of the State of New York, with its principal place of business in New York, New York.

4. National Union is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal place of business in New York, New York.

5. Ameron is a corporation organized and existing under the laws of the State of Delaware, with its current principal place of business in Houston, Texas.

## GENERAL ALLEGATIONS

**The American Home Commercial General Liability Policy**

6. American Home issued Commercial General Liability Policy no. 544-65-73 to named insured "Ameron International Corporation" for the policy period June 1, 2003 to June 1, 2004 (the "CGL Policy").

7. The CGL Policy provides commercial general liability insurance subject to an each "occurrence" limit of $1 million and general and products-completed operations aggregate limits of $2 million.

8. The CGL Policy provides coverage pursuant to all its terms, conditions, limitations, exclusions, and endorsements. The CGL Policy provides under Coverage A Bodily Injury and Property Damage Liability that American Home "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." American Home has the right and duty under the CGL Policy to defend Ameron against any "suit" seeking those damages. However, American Home has no duty to defend Ameron against any "suit" seeking damages for "bodily injury" or "property damage" not covered by the CGL Policy.

9. Coverage under the CGL Policy applies to "property damage" if caused by an "occurrence" and the "property damage" occurs during the applicable policy period.

10. The CGL Policy defines "property damage," in pertinent part, as:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it…

11. The CGL Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

12. The CGL Policy defines "impaired property" as follows:

   "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement.

   if such property can be restored to use by:

    a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

    b. Your fulfilling the terms of the contract or agreement.

13. The CGL Policy defines "your product," in pertinent part, as "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by" Ameron and includes "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product';…"

14. The CGL Policy includes various terms, conditions, and exclusions, including the following exclusions that apply here:

   This insurance does not apply to:

       \* \* \*

   **k. Damage To Your Product**

    "Property damage" to "your product" arising out of it or any part of it.

   **m. Damage To Impaired Property Or Property Not Physically Injured**

    "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

    **(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

    **(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

    This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

/ / /

/ / /

**The National Union Commercial Umbrella Liability Policy**

15. National Union issued Commercial Umbrella Liability Policy no. 219-55-63 to named insured "Ameron International Corporation" for the policy period June 1, 2003 to June 1, 2004 ("Umbrella Policy"). The Umbrella Policy has limits of $35 million each "occurrence" and general and products-completed operations aggregates. The Umbrella Policy applies excess of the CGL Policy and affords coverage pursuant to identical terms, conditions, and exclusions or that is substantially similar to the CGL Policy's coverage in all relevant respects.

**BP Lawsuit**

16. On July 7, 2004, BP America Production Company filed a lawsuit titled *BP America Production Company v. Ameron International Corporation, et al.*, in the 24th Judicial District, Jefferson Parish, Louisiana, Case No. 609-405, against Ameron and other defendant subcontractors (the "BP Lawsuit"). The BP Lawsuit concerned allegedly defective pipe products supplied by Ameron and used by BP America Production Company (collectively with all BP-related entities, "BP") in developing seawater supply and fire water deluge systems for four deep-water oil platforms.

17. In the BP Lawsuit, BP alleged that, after the pipe products were installed, the water systems sustained numerous leaks and catastrophic failures requiring extensive replacement and/or repairs. According to BP, the water systems leaked as a result of design and/or manufacturing defects and/or improper installation.

18. In its Petition for Damages, BP asserted four counts against Ameron for (1) Redhibition,[1] (2) Products Liability, (3) Negligence, and (4) Breach of

---

[1] Redhibition is a civil action available under Louisiana law against the seller and/or manufacturer of a defective product, in which the buyer demands a full refund or a reduction of the purchase price due to a hidden defect that prevents the product from performing the task for which it was purchased.

Contract and Warranty. BP alleged that it suffered damages estimated to exceed $20 million.

19. Ameron tendered the defense of the BP Lawsuit to American Home, which accepted the tender under the CGL Policy subject to a full reservation of rights. These rights included American Home's right to seek reimbursement from Ameron to the extent any of the sums American Home incurred in the defense or indemnity of Ameron were not covered under the CGL Policy and/or to apportion defense costs between covered and uncovered claims, as well as to seek contribution and/or to apportion indemnity payments between covered and non-covered claims.

20. American Home ultimately paid in excess of $1 million for attorneys' fees and costs in connection with the defense of Ameron in the BP Lawsuit.

21. BP filed a Second Supplemental and Amended Petition for Damages in the BP Lawsuit on or about May 9, 2013 which added BP-related entities as plaintiffs, amended or added certain paragraphs to the Petition, and specifically asserted that BP suffered damages of $12,864,908.75 plus interest and attorneys' fees because of the water system leaks and catastrophic failures requiring extensive replacement and/or repairs.

**Settlement of the BP Lawsuit**

22. In a letter to Ameron dated October 7, 2019, American Home and National Union agreed to pay on behalf of Ameron up to a stated amount to resolve the claims against Ameron in the BP Lawsuit pursuant to a full and complete reservation of rights. These reservations of rights included the right to seek reimbursement from Ameron of any and all sums American Home and National Union incurred to resolve claims not covered by their respective policies. Ameron was advised that the funding payment would issue under the CGL Policy and the Umbrella Policy. Ameron did not object to American Home and National Union's settlement of the BP Lawsuit on Ameron's behalf; rather, Ameron

1 | requested that American Home and National Union settle the BP Lawsuit on the
2 | stated terms.  Therefore, American Home and National Union proceeded to
3 | effectuate the settlement with BP (the "Settlement").

4 |     23.    BP settled with Ameron and other defendant subcontractors pursuant
5 | to a confidential agreement dated December 18, 2019 for a payment through their
6 | respective insurers.  American Home and National Union paid in full the
7 | Settlement amount, i.e., Ameron's share of the total confidential settlement,
8 | pursuant to a full and complete reservation of rights.  American Home and
9 | National Union paid the Settlement amount to BP on behalf of Ameron on
10 | February 27, 2020.

## FIRST CAUSE OF ACTION – REIMBURSEMENT

### (By American Home For Reimbursement Of Costs Of Defense)

24. American Home incorporates by reference, as if fully restated here, paragraphs 1 through 23 above.

25. American Home has incurred over $1 million in attorneys' fees, costs, and other expenses in connection with the defense of Ameron in the BP Lawsuit.

26. American Home had no duty under the CGL Policy to afford a defense to Ameron in the BP Lawsuit.  Because the claims asserted against Ameron do not involve the Property Damage coverage, or are otherwise excluded from coverage by the Your Product and Impaired Property exclusions of the CGL Policy, there is no potential for coverage for the BP Lawsuit.  American Home therefore paid, and Ameron received the benefit of, attorneys' fees, costs, and other expenses that American Home had no obligation to pay in the defense of the BP Lawsuit and which Ameron had no right to receive.

27. American Home has an equitable and quasi-contractual right to be reimbursed by Ameron for some or all attorneys' fees, costs, and other expenses

which were paid or incurred by American Home in the defense of the BP Lawsuit, pursuant to *Buss v. Superior Court*, 16 Cal. 4th 35, 51 (1997), and related cases.

## SECOND CAUSE OF ACTION – REIMBURSEMENT

**(By American Home and National Union For Reimbursement Of Settlement)**

28. American Home and National Union incorporate by reference, as if fully restated here, paragraphs 1 through 27 above.

29. American Home and National Union paid the Settlement on behalf of Ameron subject to a complete reservation of rights, including the right to seek reimbursement of any amounts paid in settlement.

30. American Home and National Union had no duty to pay the Settlement because the claims asserted against Ameron in the BP Lawsuit do not involve the Property Damage coverage of the CGL Policy and Umbrella Policy, or are otherwise excluded from coverage by the Your Product and Impaired Property exclusions of the CGL Policy and the Umbrella Policy. American Home and National Union therefore paid, and Ameron received the benefit of, amounts that American Home and National Union had no obligation to pay and Ameron had no right to receive.

31. American Home and National Union reserved their respective rights under the CGL Policy and the Umbrella Policy and California law to seek from Ameron recoupment of amounts American Home and National Union paid and/or that they were not obligated to pay on behalf of Ameron in resolving the BP Lawsuit.

32. Ameron has been conferred a benefit to which it is not entitled and, therefore, has been unjustly enriched. In equity, all amounts to which Ameron is not entitled should be returned to American Home and National Union.

33. As a result of Ameron's unjust enrichment, a quasi-contractual right of reimbursement has arisen in favor of American Home and National Union and against Ameron for the payments they made on Ameron's behalf, in connection

COMPLAINT FOR REIMBURSEMENT
8

with the settlement of the BP Lawsuit on behalf of Ameron, pursuant to *Blue Ridge Ins. Co. v. Jacobsen*, 25 Cal. 4th 489, 497 (2001), and related cases.

## PRAYER FOR RELIEF

Wherefore, plaintiffs American Home and National Union pray for relief as follows:

1. For a judgment on the First Cause of Action that, by reason of the terms, conditions, and exclusions of the CGL Policy, American Home is entitled to restitution and reimbursement from Ameron for some or all amounts it expended in the defense of Ameron in the BP Lawsuit, together with interest at the legal rate from date paid;

2. For a judgment on the Second Cause of Action that, by reason of the respective terms, conditions, and exclusions of the CGL Policy and the Umbrella Policy, American Home and National Union are entitled to restitution and reimbursement of the amount paid to fund the Settlement of the BP Lawsuit, together with interest at the legal rate from date paid;

3. For costs incurred herein; and

4. For such other and further relief as the Court deems just and proper.

Dated: November 2, 2020

NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP

By: */s/ Matthew C. Lovell*
Matthew C. Lovell
Randall P. Berdan
Attorneys for Plaintiffs AMERICAN HOME ASSURANCE COMPANY and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.